Ortega is not here to argue that a conspiracy did not exist and he's not here to argue that he did not have a weapon. He is here to argue the issue of causation. Counts 1, 2, 3, and 4 charged narcotics activity resulting in death. Now the cooperator here by the name of Rainey was really the chief government witness as to what was delivered and what was he instructed to do. And he testified that on March 17th he was instructed to deliver a bag of cocaine to Julia Gerharmani. And on March 17th he was instructed to deliver two black bags of cocaine to Ross Matangi. And on that same day he was instructed to deliver one bag, baggie of cocaine to Amanda Sher. Well that's what he says he was instructed to deliver. And in fact he did not know what was in the bags. He didn't know if the bags according to his testimony contained cocaine, fentanyl, or any combination or anything else for that matter. Counsel, just to follow up on Judge Park's question, is there any dispute that the sort of translucent black baggies were somewhat distinctive? There were translucent black baggies but were they distinctive? I don't think they were distinctive because if you look at, and I have detailed, and I don't want to read this, but I've detailed on pages 8, 9, and 10 of my brief. And it doesn't seem to be refuted by the government exactly what was found in each of the death locations. So for example, if he was instructed to deliver two translucent black baggies to Matangi, what was found at the Matangi apartment or hotel room were many bags, not just two. And there were numerous translucent bags recovered according to the police. There was no separately packaged fentanyl. There were eight baggies were found in total. I mean, so I don't know what the drug trade uses to delineate a specific brand and whether it's a translucent black baggie or not. But the fact that translucent black baggies were delivered doesn't mean that it is necessarily so distinctive that you can rely on it for causation. For example, when the police responded to the Matangi hotel room, there were baggies all over the place. There were lines of white powder. There was a hotel key card rolled up, a $20 bill, a Ziploc bag containing cocaine. The issue here. Just so I know what you're arguing, you're challenging the sufficiency of evidence. I am arguing the sufficiency of evidence as to causation. So you have each of these death locations. There were drugs all over the place. And they far exceeded any amount that the cooperator testified that he delivered to any of the locations. The ME wasn't able to say if the three people, if any of them, died from fentanyl. There was a but-for witness who testified to that. We don't know whether or not any of the fentanyl found was deadly. We don't know if the fentanyl caused death. We don't know what... What does the but-for testimony mean then? If you're telling us it doesn't mean that fentanyl caused the death of these three people, so what does it mean? I'm talking about from the medical examiner's office. Oh, okay. So the but-for is somebody who looked at a bunch of pictures, got paid. Okay, so we're setting aside the but-for. So you're focused solely on what the medical examiner offers. Well, even if you accept the but-for evidence, which drugs did these people ingest that killed them? The delivery from Rainey wasn't the only narcotic substances found in these apartments. There were drugs all over the place. There were drugs in dressers. There were drugs on tables. There were drugs... There were lines of cocaine that were set up. And I thought the black baggies were found near the bodies, which made it seem like that was the last thing that they had taken in all three of the cases. There was one translucent black baggie recovered at the Cher apartment. There were eight baggies recovered from the Matangi apartment. As to Garamani, there was a ziplock baggie containing cocaine, which was recovered from inside the apartment. So, yeah, I mean, there's a coincidence. But the coincidence is refuted by the fact that there were other black baggies found. These were not the only black baggies that were distributed to the locations. And, again, if there were multiple drugs found in the location, how can you say beyond a reasonable doubt what these people took that killed them? Well, that's not what we're asking right now, right? How can any reasonable jury have found, based on the evidence, that this was the cause of death? There's a coincidence. The standard of review. Your Honor, I disagree. I would say that the only thing that the jury was presented with... You disagree with the standard of review or with the... No, I disagree with the statement that a reasonable jury could have made that decision and come to that result. What I'm saying is that you have a coincidence, but you can't go into three different locations and see multiple drugs of varying kinds in different locations, exceeding what was delivered, and say that beyond a reasonable doubt, a reasonable jury can infer that what was delivered was ingested and, therefore, killed these people. We just don't know that. We don't know that. And I would submit that on the issue of causation, the evidence, other than a coincidence, is completely legally lacking. I've reserved two minutes. Thank you, counsel. Thank you. We'll hear from the government. Good morning, Your Honors. My name is Michael Herman. I represent the government or the United States here in this appeal, as I did in the district court. Let me start with walking the court through just a factual misunderstanding on the part of Mr. Sywer's presentation, the idea that there were drugs everywhere at all of these scenes. It is true that there were eight black translucent bags found at Mr. Matangi's hotel room, but all those bags were delivered by Ortega, and that was shown in the evidence. The evidence shows that on March 16th, Mr. Matangi ordered two bags, but those bags were double bagged, and that's in Government Exhibit 1006 on page 7. So those two double bags were actually four bags. There was an outer bag that was discarded, and then there was an inner bag that had the cocaine and the fentanyl. And then the following day, March 17th, the day of his death, he ordered two more bags. So he ordered four bags. They were each double bagged, thus eight bags. That's the explanation. There was no other drugs. The evidence showing that the Ortega's drugs caused the victim's deaths were just absolutely overwhelming. You have three victims, all total strangers, all received drugs from the defendant on the same day, all had the same drugs in their locations in different parts of Manhattan, all received drugs from the same courier, Cooperator Rainey, all ordered cocaine from the defendant via text message, which was introduced at the trial. Ortega's batch of drugs that day, according to Ortega, was too strong, as he told people in text messages. Ortega even received a text message that his batch that he had sent to another individual caused that person to go to the hospital. All three victims, who were young and otherwise healthy, were found dead shortly after receiving Ortega's drugs. Like I said, identical black baggies were found near all three victims' bodies. Fentanyl was found in all those bags, and all three victims had fentanyl in their blood. That's even putting aside the government's medical toxicology expert, who testified that they would not have died but for the fentanyl. Under a very deferential standard of review, a rational jury was entitled to credit these conclusions. The defendant raises a number of other issues that I'm happy to consider, including the testimony of a proposed testimony of Mr. DeLora, that the court properly excluded under the federal rules of evidence. Unless the court has any questions about that issue or the other issues, then we would rest on our brief. Counsel, in your brief to us, you have some points where you talk about Ortega deliberately mixing in fentanyl. There's a place where you say, instead of taking the loss, Ortega decided to add fentanyl to his cocaine to make it stronger, setting aside the fact that the citation in the PSR doesn't say anything about that. At trial, your position, your focus, at least in closing, seemed to be, look, it doesn't matter if you put it there. I just want to make sure, are you sort of shifting positions here? Or are you persistent and consistent in the idea that it doesn't matter whether Ortega knowingly, deliberately put the fentanyl in, he sold it, he's liable for the consequences? That's right, Your Honor. Legally, it doesn't matter whether Ortega knew there was fentanyl for him to be guilty of the narcotics conspiracy and the substantive narcotics counts resulting in death. But in fact, he did. And we proved that at the trial via the text messages that are in the government summary chart of GX 1006. After he received text messages from- I'm not sure we have 1006, but could you provide it to us? All of the government's admitted exhibits are in the district court's record and are cited in our brief. But you didn't separately give that to us, right? It's in the district court record. Yes, Your Honor. But the court presumably has the trial testimony as well. The court referenced the closing arguments. If the court would prefer, we're happy to provide that exhibit to the court. No, I guess I would say in the future, when you rely so heavily, it's really helpful to give us a supplemental appendix. But I was sort of thrown by the reference, by the focus, what seemed to be the focus on that deliberate action in the briefing, when the closing argument seemed to be very carefully focused on the government's position that that was unnecessary and not the point. Understood, Your Honor. As I mentioned, legally, there is no, it's not required that Ortega knew it was fentanyl. It's certainly a sentencing aggravating factor that we made attention to the district court at sentencing. And the evidence was put before the jury that he did know and he did deliberately put fentanyl in the drugs. Thank you. Thank you, Your Honor. Thank you, Counsel. Thank you, Your Honor. Your Honors, I would just urge you to look at the breakdown of what, on pages 8, 9, and 10, with reference to the transcript locations in the exhibits, of what was found in each location. There is also no evidence that the drugs that customer Matt complained of as being too strong were the same batch, same supplier, same anything, as the drugs delivered to the three locations. Now, for example, if you look at what was found in the Matangi Hotel room, there were bags that contained cocaine and fentanyl. There were two separate bags that contained just fentanyl. So you have different mixes and different substances in each of these multiple bags, and the government could say, well, they were double bagged. But in point of fact, each bag contained something different, which indicates they didn't come from the same batch. And if you look at all the other locations, there was enough drugs in those apartments to kill anybody. How does a jury know which of the substances was ingested? There is no evidence as to that. And I submit, Your Honors, that the causation element fails even under a deferential standard. I don't think deferential standard covers coincidence, and that's what the government asked the jury to consider and to believe, and they're doing the same thing today. Thank you. Thank you, counsel. Thank you both. We'll take the case under advisement.